The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically at the time and date indicated, which may be materially different from its entry on the record.



**Russ Kendig**
**United States Bankruptcy Judge**

**Dated: 12:37 PM August 13, 2021**

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | |
| RICHARD KELLY LEEDY, | ) | CASE NO. 21-60338 |
| | ) | |
| Debtor. | ) | RUSS KENDIG |
| | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| | ) | **(NOT FOR PUBLICATION)** |
| | ) | |

Anthony J. DeGirolamo, the chapter 7 trustee ("Trustee"), filed an application ("Application") to employ Russ Kiko Associates, Inc. ("Kiko") to auction estate property. No objections were filed. The court will not approve the Application as presented. Trustee is free to request a hearing if he believes it would be helpful.

The court has subject matter jurisdiction of this case under 28 U.S.C. § 1334 and the general order of reference issued by the United States District Court for the Northern District of Ohio. General Order 2012-7. This is a statutorily core matter under 28 U.S.C. § 157(b)(2)(A) and the court has authority to enter final orders in this matter. Pursuant to 28 U.S.C. § 1409, venue in this court is proper.

This opinion is not intended for publication or citation. The availability of this opinion, in electronic or printed form, is not the result of a direct submission by the court.

# DISCUSSION

Trustee wants to hire Kiko to sell a 1999 Winnebago Trace, with an estimated value of $8,000.00, via online auction. Per the Application, Kiko will be compensated 10% of the total gross proceeds of the sale and "a ten percent (10%) buyer's premium to the purchaser(s) to cover the expenses of the auction including the 2% Proxibid online bidding platform fee, 4% credit card transaction fees, and 2% advertising/promotional charges and facility rental fee." The total fees are estimated to be $500.00.

11 U.S.C. § 327(a) permits a trustee to hire professionals, including auctioneers, to assist in administration of the estate. Professionals are entitled to compensation "on any reasonable terms and conditions of employment, including on a retainer; on an hourly basis, on a fixed or percentage basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Under § 330(a), the court is instructed to award:

> (A) Reasonable compensation for actual, necessary services rendered by the trustee, examiner, ombudsman, professional person, or attorney and by any paraprofessional person employed by any such person; and
>
> (B) reimbursement for actual, necessary expenses.

The court finds the proposed compensation to Kiko is unreasonable. There are two reasons the court will not approve the Application. First, it is unclear why the Trustee needs an auctioneer since this is being put on an online auction site. No reason is given why the Trustee could not put this on an online auction himself without paying a 10% commission.

Second, the fee structure is unacceptable. A flat fee commission on the gross auction sale price is a common reimbursement scheme for bankruptcy estate auctions. The court found cases allowing commissions from five percent (5%) to ten percent (10%) or more. In re THR & Assoc., 2018 WL 279741 (Bankr. C.D. Ill. 2018) (awarding 5%); In re Kloberdanz, 2011 WL 5854692, *8 (Bankr. W.D. Colo. 2011) (awarding 7% as real estate auction commission and 12% for chattel); In re Bishop, 2007 WL 7532285, *1 (B.A.P. 9th Cir. 2007) (approving 10%). In 1998, the United States Trustee indicated it would not object to compensation that did not exceed ten percent (10%) of the first $50,000, five percent (5%) of amounts between $50,001 and $100,000, and three percent (3%) of amounts over $100,000. In Remote Operating Sys., Inc., 238 B.R. 656, 658-59 (Bankr. N.D. Tex. 1999). This court routinely approves applications seeking a ten percent (10%) commission, plus expenses, as reasonable for the services rendered.

The additional payment of the ten percent (10%) buyer's premium to Kiko is troubling. Concerns about buyer's premiums have been noted and addressed by courts. THR & Assoc., 2018 WL 279741, * 2 (noting buyer's premiums often double or triple the compensation awarded); In re Driller, 2004 WL 1661981 (Bankr. D. Idaho 2004) (discussing the potential

negative impact of a buyer's premium to sellers). Even auction industry insiders point to the potential self-seeking nature of a buyer's premium:

> The most common explanation is that the buyer's premium contributes to covering the costs of running the auction house (helping to pay for the businesses' facilities and resources), thereby ensuring quality service — including an accomplished staff, accurate information, marketing endeavors, etc. But, perhaps predictably, there is another understated and more self-serving explanation for the buyer's premium's continued use. The buyer's premium is a way for auction houses to maintain profitability and, to a certain extent, auction houses charge buyers this fee because they can.

Alexandra Ellison, *About the Buyer's Premium: The Definition, History and Reality of an Auction House Phenomenon*, The Auction Insider (Oct. 4, 2018), https://witherells.com/about-the-buyers-premium-the-definition-history-and-reality-of-an-auction-house-phenomenon/.[1]

      Kiko acknowledges that the buyer's premium is intended to cover auction costs and outlines some of those costs. What is troublesome for the court is the Bankruptcy Code allows reimbursement for "actual, necessary expenses." It does not authorize a flat fee for expenses.

      If the Winnebago sells for $8,000, and Kiko receives the requested compensation, Kiko will get $1,600, or 20%. However, Kiko estimates its expenses are only $500, not the $800 that will result from the levy of the 10% buyer's premium. Paying $500 in actual expenses results in total compensation of $1,300 to Kiko, or 16.25%. On these figures, Kiko receives 3.75% more by imposing a buyer's premium. Those dollars are dollars that could be available to creditors of the estate.

      Moreover, the concept of a buyer's premium is a fiction. This is not extra money that someone else pays. There is a total price that is paid and all money that is not paid to the estate is real money that is part of the price.

      Estate professionals bear the burden of proving their requested compensation is reasonable. In re Capps, 2010 WL 883760, *3 (Bankr. D. Idaho 2010). For the reasons stated above, Kiko has not met its burden and the court will not approve the terms set forth in the application to employ. An order will be entered immediately reflecting this decision.

#     #     #

---

[1] The court recognizes the likely self-serving nature of this article from an auction house rejecting use of a buyer's premium as an attempt to gain a leg up on its competition charging buyer's premiums.

**Service List:**

Anthony J. DeGirolamo
3930 Fulton Drive NW, Suite 100B
Canton, OH 44718

Russ Kiko Associates, Inc.
Attn: George Kiko
2722 Fulton Drive NW
Canton, Ohio 44718